IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

UNITED STATES OF AMERICA                                           PLAINTIFF

v.                    CASE NO. 4:20CR00305-LPR

FREDERICK JACKSON                                                  DEFENDANT

**AMENDED MOTION TO SUPPRESS EVIDENCE AND BRIEF IN SUPPORT**

COMES NOW the Defendant, Frederick Jackson, by and through his attorney, Toney Brasuell of the Brasuell Law Firm, and for his Motion states as follows:

1.      Undersigned counsel received additional information related to the illegal detention of Mr. Jackson including videos from the Little Rock Police Department and the dispatch sheet.  Based on this new information obtained via FOIA, undersigned counsel seeks to amend the original motion to include information about the caller and about information not included in the incident report but visible on the police video.

2.      This motion seeks to exclude the alleged evidence seized from Mr. Jackson during an illegal police encounter as detailed below.  Undersigned counsel incorporates the brief in support into this motion for expediency of the court's review.

  I.    FACTS

According to the police reports, on December 24, 2019, officers from Little Rock Police Department (LRPD) responded to a dispatch call alleging that a black male wearing a camo jacket was selling drugs near 8th St. and Cumberland. Upon further investigation by undersigned counsel, the caller identified himself by first name only and a telephone number. It is unclear whether the name or number were verified by the LRPD prior to the encounter. Reliability of the caller remains an issue. The initial responding officer, Officer Jake Starks, observed Mr. Frederick Jackson wearing a camo jacket walking eastbound on 8th St. Officer Starks made contact with Mr. Jackson and told him he was responding to a call about Mr. Jackson selling drugs, to which Mr. Jackson responded "No sir, I don't know why," explained he had just been in his car, and pointed towards his Chevrolet Tahoe.

At that time, Officers Goad and Farmer arrived, and Mr. Jackson began to walk away. Officer Starks told Mr. Jackson to stop walking and stay where he was. According to Officer Starks' incident report, Mr. Jackson then hesitated before resuming walking away, at which time then grabbed him and detained him for their safety. Contrary to the incident report, however, dashcam footage shows that Mr. Jackson in fact said "Yes sir," and stopped walking, continuing to speak with the officers. At that time, all three officers surrounded Mr. Jackson.

Officer Starks went on to ask Mr. Jackson what he had been doing, and Mr. Jackson said "I just got here," and again motioned towards his vehicle. Officer Starks then asked Mr. Jackson "What's in the backpack?" and Mr. Jackson responded "Nothing sir." Officer Starks followed up by asking "Mind if we look

2

through it?" and before Mr. Jackson had a chance to answer, Officer Goad reached out and grabbed Mr. Jackson while saying "Come here. We're not doing this anymore. Come on." At that time, all three officers grabbed and tackled Mr. Jackson to the ground, with Officer Starks kneeing Mr. Jackson in the rear of his head in the process, pushing Mr. Jackson's face into the pavement. Mr. Jackson was then taken into custody.

## II.     APPLICABLE RULES OF CRIMINAL PROCEDURE

Rule 3.1 of the Arkansas Rules of Criminal Procedure requires that an officer must reasonably believe that a person is committing, has committed, or is about to commit a crime for the officer to detain a person.

Rule 2.2 of the Arkansas Rule of Criminal Procedure provides that an officer may only request, not require, a person to respond to questions or otherwise cooperate with an officer's request in the investigation or prevention of a particular crime.

## III.    ARGUMENT

### a. The United States Supreme Court Recognizes that an Informant's Tip Alone Does Not Supply the Reasonable Suspicion Required to Justify a Stop.

The Supreme Court held in *Illinois v. Gates* that courts should make a totality-of-the-circumstances analysis in considering the veracity and basis of knowledge of persons providing hearsay information. *Illinois v. Gates*, 462 U.S. 213, 238 (1983). The Court explained that officers may only rely upon information received through an informant when the informant's statement is reasonably corroborated by other matters within the officer's knowledge. *Id.* At 242. Several

factors are considered in the determination of reasonable suspicion based on a tip, including: the credibility and reliability of the informant, the specificity of the information contained in the tip or report, the extent to which the information in the tip or report can be verified by officers in the field, and whether the tip or report concerns active or recent activity, or has instead gone stale. *U.S. v. Martinez*, 486 F.3d 855, 861 (5th Cir. 2007).

In *Florida v. J.L.,* the Supreme Court focused on anonymous tips, and held that the reasonableness of suspicion must be measured by what officers know before they conduct a search, and that the bare report of an unknown, unaccountable informant who neither explains how he knows unlawful conduct is at play nor supplies any basis for believing he has inside information about such conduct does not illustrate the reliability required to justify an investigatory stop. *Fla. v. J.L.*, 529 U.S. 266, 271 (2000). In *J.L.,* responding officers located a suspect matching the description given by the caller, however, the Court held that a tip must be reliable in its assertion of illegality, not merely in its tendency to identify a determinate person. *Id.* at 272. The fact that the allegation turned out to be correct did not suggest that the officers had a reasonable basis for suspecting J.L. of engaging in illegal conduct. *Id.* at 271. Where there is no evidence suggesting any basis for finding an informant credible, such as whether or not the informant has any past dealings with the police, the Fifth Circuit has considered tips to be the functional equivalent of an anonymous tip, such as the one in *J.L. Martinez* at 862. Other courts have employed similar methodology. *U.S. v. Oliver*, 3:09-CR-00144-R, 2012

WL 2601948, at *7 (W.D. Ky. July 5, 2012) (even tip from known informant requires evidence of informant's reliability or tip must contain independently verifiable details showing knowledge).

The First Circuit opined on the grey area of reliability between known informants and anonymous tips in *U.S. v. Monteiro*, where the Court found that a tip not technically bearing the moniker "anonymous" was akin to the anonymous tip in *J.L.,* in that it could not provide reasonable suspicion unless corroborated. *U.S. v. Monteiro*, 447 F.3d 39, 45 (1st Cir. 2006). In *Monteiro,* the Court explained that although a dispatcher can make some rough judgments about the age, cognitive ability, and motivations of an informant based upon her tone of voice, appearance or demeanor, the police responding to the call have no way of knowing the state of mind of the person relaying the tip, or whether she is a person who can be relied upon to relate events accurately. *Id.* at 45-46. For an uncorroborated hearsay tip to be reliable there must be a stronger indication that the informant can be trusted. *Id.* Additionally, in the same way that anonymous tips are inherently unreliable due to the risk of fabrication, tips from a known informant are at risk of being unreliable where there are risks of fabrication such as the possibility that the informant may be a gang member whose motive is to get his rival in trouble with the law. *Id.* The Court goes on to emphasize that corroboration of a tip is not satisfied just because it provides a solid means of identification; reasonable suspicion requires that a tip be reliable in its assertion of illegality. *Id.* at 47. Even officers' awareness of a person's prior criminal history is not sufficient to

corroborate a tip without the officer(s) independently observing suspicious activity or other objective indications of ongoing criminality. *Id.*

Officer Starks received a dispatch call about a narcotics sale and a general description of the alleged offender. The caller, who is not alleged to be a known informant with a history of providing reliable information, alleged a bare report that a black male in a camo jacket was selling drugs. Although this was an accurate description of Mr. Jackson's jacket, the tip did not demonstrate any credibility as to knowledge of criminal activity. It is not alleged that the officers were familiar with the informant, nor aware of whether the informant could be considered reliable. At the time the officers responded to the tip, the tip was akin to the anonymous tip in *J.L.* The officers did not perform independent observation to corroborate the tip, and there was a high risk of fabrication. The informant did not demonstrate any indicia of veracity or knowledge of criminal activity, and the officers did not have sufficient reasonable suspicion based on the tip to detain and search Mr. Jackson.

> **b.    An Officer May Only Request That A Person Furnish Information or Otherwise Cooperate With the Officer's Request When Investigating A Crime; Compliance With The Request May Not Be Regarded as Involuntary.**

Arkansas Rule of Criminal Procedure 2.2 allows an officer to request a person to furnish information if he is investigating or preventing a particular crime. Ark. R. Crim. P. 2.2(a). However, encounters under Ark. R. Crim. P. 2.2 are permissible only if compliance with the request for information or other cooperation is voluntary. Ark. R. Crim. P. 2.2(b).

Rule 2.2 does not provide authority for an officer to seize or require a citizen to comply with the officer's request; the rule only allows the officer to approach a citizen much in the same way a citizen may approach another citizen and request aid or information. *Scott v. State*, 67 S.W.3d 567, 573 (Ark. 2002). The Arkansas Supreme Court explained in *Scott v. State* that when an encounter between an officer and citizen extends beyond one which is consensual, the encounter is a seizure and outside of the scope of Rule 2.2. *Id.* at 574.

Although Officers Starks was following up on a caller tip, his incident report left out critical facts by failing to mention that Mr. Jackson complied with demands to stop walking and continue speaking with officers. Mr. Jackson had no duty to respond and was within his right to refuse such a request as specified by ARCP 2.2(b).  Once Mr. Jackson refused the officer's "request to cooperate", the encounter was no longer permitted by Rule 2.2. The officers' indication that Mr. Jackson was obligated to cooperate by demanding that he stop walking and subsequently seizing Mr. Jackson was an illegal seizure and violation of ARCP 2.2 and the Fourth Amendment.

### c. It Is Well Established That Searches and Seizures Must Pass A Test of Objective Reasonableness To Prevent Arbitrary And Discriminatory Law Enforcement.

The Constitution mandates that all searches and seizures be reasonable. U.S. Const. Amend. IV. Whenever a police officer accosts an individual and restrains his freedom to walk away, he has 'seized' that individual within the meaning of the Fourth Amendment. *Terry v. Ohio*, 392 U.S. 1, 16 (1968). To justify such a seizure, the detaining officer must have specific articulable facts which,

taken together with rational inferences from those facts, leads him to conclude that the person detained is, has been, or soon will be engaged in criminal activity.

Arkansas Rule of Criminal Procedure 3.1 requires that an officer have reasonable suspicion that a person is committing, has committed, or is about to commit a crime prior to stopping and detaining that person. Ark. R. Crim. P. 3.1. A finding of reasonable suspicion rests upon the totality of the circumstances, and walking away from the police is not indicative of criminal behavior. *U.S. v. James,* 62 F. Supp. 3d 605, 613 (E.D. Mich. 2014) (no reasonable suspicion where suspect with sagging pants walked away from officers in a high crime area); *Petro v. Town of W. Warwick ex rel. Moore,* 889 F. Supp. 2d 292, 323 (D.R.I. 2012) (no reasonable suspicion where suspect walked away from police investigating call alleging vandalism and stated "you're not the boss of me" in response to commands to stop walking away).

Here, Mr. Jackson was seized when the officers grabbed him and tackled him to the ground. This seizure was a violation of the Fourth Amendment and Rule 3.1. The officers did not have knowledge of any specific articulable facts which would lead to a reasonable conclusion that Mr. Jackson was engaged in any criminal activity. Mr. Jackson complied with the initial demand to speak with Officer Starks, answered all of the officers' questions and denied the allegation that he was selling drugs, complied with officers' demands to stop walking, and asserted his right to be free from and unreasonable search and seizure. At the time the officers grabbed Mr. Jackson, he was standing still and did not pose a threat. Merely walking down the

street is not, without more, suspicious, and a bare allegation made by a caller without any established credibility does not supply reasonable suspicion of criminal wrongdoing. Any evidence subsequently discovered as a result of Mr. Jackson's unconstitutional seizure must be considered fruit of the poisonous tree and consequently suppressed.

### IV.     CONCLUSION

The seizure of Mr. Jackson was a violation of Arkansas Rules of Criminal Procedure 3.1 and 2.2, and the Fourth Amendment of the United States Constitution.  Officers Starks, Goad, and Farmer did not have reasonable suspicion that Mr. Jackson was committing, had committed, or was about to commit any crime; nor was Mr. Jackson required to respond to any request in the investigation or prevention of a particular crime; therefore, any evidence obtained subsequent to the illegal seizure of Mr. Jackson must be suppressed.

WHEREFORE, Defendant Frederick Jackson respectfully requests this Court grant his Motion and suppress any and all evidence gained subsequent to his illegal stop by the police.

Respectfully submitted,

**Toney Brasuell**
ABA No. 2005279
Attorney for Jackson
Brasuell Law Firm, PLLC
3700 Old Cantrell Rd., Suite 102
Little Rock, AR 72202
(501) 404-7111-phone
(501) 325-2135-fax
toney@tbblawyer.com