IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No. 4:20CR00305 LPR |
| | ) | |
| FREDERICK JACKSON | ) | |

**UNITED STATES' RESPONSE IN OPPOSITION TO DEFENDANT'S
MOTION TO SUPPRESS EVIDENCE**

The United States of America, by and through Jonathan D. Ross, Acting United States Attorney for the Eastern District of Arkansas, and Assistant United States Attorney Bart Dickinson, for its response in opposition to defendant's motion to suppress evidence, states as follows:

**I. Background**

At approximately 3:56 a.m. on December 24, 2019, officers with the Little Rock Police Department responded to a call from a complaint that advised that a black male wearing a black skull cap and a camo jacket was selling drugs out of a black SUV in the area of 209 East 8th Street. (see Government Exhibit 1). Upon arrival, officers saw the defendant wearing a camo jacket, walking east bound away from a black Chevy Tahoe, with a black shoulder bag, in the exact location of the complaint call advising of a person fitting the defendant's description. The defendant was the only person out on the street area. Officer Starks spoke to the defendant and advised him he was there about a call of a man selling narcotics that matched the description and clothing of the defendant. The defendant appeared apprehensive and advised officers he had just come from the black Tahoe. Officers asked the defendant where he was going and what he had in his bag. During the encounter, the defendant initially began to walk away from officers and then stating backing away. Officer Goad noticed the defendant look over his shoulder and suspected

1

he would flee, so he grabbed the defendant's arm due to his refusal to comply. At this point, the defendant began to struggle with officers and a loaded pistol fell from the defendant's pocket. When the officers realized the defendant had a deadly weapon, the officers forced the defendant to the ground and attempted to prevent him from using his hands, subdue him, and place him in restraints. The defendant continued to resist and refused to comply with officers' orders. After several minutes, officers were able to control the defendant and get him into restraints. The firearm that fell out of the defendant's pocket was a loaded Smith & Wesson .38 caliber revolver. A search of the defendant's bag and clothing revealed multiple bags of suspected cocaine, two pills in a bottle labeled as Oxycodeine, digital scales, cash, and a pair of brass knuckles. (See Government Exhibit 2). The black Tahoe was occupied by the defendant's brother and Sara McCloud. The vehicle belonged to the defendant. MVR video of the incident recorded the episode.

An ACIC records check revealed that the defendant was a convicted felon. On October 8, 2020, the Grand Jury for the Eastern District of Arkansas returned an indictment charging the defendant with being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1); possession of cocaine with intent to distribute, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C); and possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c).

The defendant filed the instant motion to suppress on June 1, 2021. The defendant filed an amended motion to suppress on June 15, 2021. In the motion, the defendant contends that the evidence should be suppressed because the officers lacked reasonable suspicion for the stop. For the reasons that follow, the defendant's arguments lack merit, and his motion should be denied.

**II.    Law and Argument**

The officers engaged in an investigative stop of the defendant. "A police officer 'may,

consistent with the Fourth Amendment, conduct a brief, investigatory stop when the officer has a reasonable, articulable suspicion that criminal activity is afoot.'" *United States v. Fields*, 832 F.3d 831, 834 (8th Cir. 2016) (quoting *Illinois v. Wardlow*, 528 U.S. 119, 123 (2000)).[1]

"Reasonable, articulable suspicion for a *Terry* [investigative] stop requires less than probable cause of criminal activity, but the suspicion cannot be based on an 'inarticulate hunch.'" *United States v. Horton*, 611 F.3d 936, 940 (8th Cir. 2010) (citing *Terry v. Ohio,* 392 U.S.1, 22 (1968)). "[I]n justifying a particular intrusion, the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *Terry*, 392 U.S. at 21. While "reasonable suspicion" must be more than an inchoate "hunch," the Fourth Amendment only requires that police articulate some minimal, objective justification for an investigatory stop. *United States v. Sokolow*, 490 U.S. 1, 7 (1989) (citing *Terry*, 392 U.S. at 27 and *INS v. Delgado*, 466 U.S. 210, 217 (1984)). "[T]he standard employed is less demanding than the standard of probable cause that governs arrests and full-scale Fourth Amendment searches, both with respect to the amount of supporting information that is required to establish reasonable suspicion and with respect to the degree of reliability that the information must exhibit." *United States v. Bell*, 480 F.3d 860, 863 (8th Cir. 2007) (quoting *United States v. Spotts*, 275 F.3d 714, 718 (8th Cir. 2002)).

"The existence of reasonable, articulable suspicion is determined by the totality of the circumstances, taking into account an officer's deductions and rational inferences resulting from

---

[1] In his motion and amended motion, Jackson cites Arkansas law and the Arkansas Rules of Criminal Procedure for his argument, but federal courts apply the Fourth Amendment, not state law, in deciding a motion to suppress. "[W]hen a federal court must decide whether to exclude evidence obtained through an arrest, search, or seizure by state officers, the appropriate inquiry is whether the arrest, search, or seizure violated the Federal Constitution, not whether the arrest, search, or seizure violated state law." *United States v. Burtton*, 599 F.3d 823, 828 (8th Cir. 2010) (quoting *United States v. Bell*, 54 F.3d 502, 504 (8th Cir. 1995)).

relevant training and experience." *Horton*, 611 F.3d at 940 (citing *United States v. Arvizu,* 534 U.S. 266, 273–74 (2002)). "This process allows officers to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that 'might well elude an untrained person.'" *Arvizu*, 534 U.S. at 273. (citation omitted). "Factors that may reasonably lead an experienced officer to investigate include time of day or night, location of the suspect parties, and the parties' behavior when they become aware of the officer's presence." *United States v. Dawdy*, 46 F.3d 1427, 1429 (8th Cir. 1995). Eighth Circuit precedent "rejects any requirement that there must be a definite or certain connection to the criminal activity to support reasonable suspicion." *United States v. Mosley*, 878 F.3d 246, 252 (8th Cir. 2017). "[R]easonable suspicion 'need not rule out the possibility of innocent conduct.'" *Navarette v. California*, 572 U.S. 393, 403, 134 S. Ct. 1683, 1691, 188 L. Ed. 2d 680 (2014) (quoting *Arvizu*, 534 U.S. at 277).

Additionally, during an investigative stop, an officer is justified in making "a limited, warrantless search for the protection of himself or others nearby in order to discover weapons if he has a reasonable, articulable suspicion that the person [being detained] may be armed and presently dangerous." *United States v. Roggeman*, 279 F.3d 573, 577 (8th Cir. 2002) (citing *Terry*, 392 U.S. at 30). Under this objective test, the "officer need not be absolutely certain that the individual is armed; [rather] the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger." *Terry*, 392 U.S. at 27.

The defendant contends that the officers who stopped him could not have had reasonable suspicion based on the 911 call because it lacked sufficient indicia of reliability. The defendant cites the Supreme Court's ruling in *Florida v. J.L.*, 529 U.S. 266 (2000), as a basis for suppressing

the evidence against him. The facts of this case render it distinguishable from *Florida v. J.L.* In *J.L.*, police received an anonymous tip that a young black male in a plaid shirt at a bus station was in possession of a firearm. The Supreme Court held that the tip lacked sufficient indicia of reliability. 529 U.S. at 271. Here, the communication received provided more details and information for the police. The communication reported the sale of narcotics, in the location of 209 East 8th Street, by a black male in a camo jacket and skull cap, from a black SUV, in the early morning hours of December 24, 2019. When officers arrived, they observed the defendant, matching the description, in close proximity to a black SUV, in the specific area, early in the morning. Also, unlike the circumstances and facts in *Florida v. J.L.,* the defendant was the only person on the street at the location. The Court further noted that in *J.L.*, there was no indication that the call "was contemporaneous with the observation of criminal activity or made under the stress of excitement caused by a startling event." *Id.* at 400. In contrast, the communication to the Little Rock Police was contemporaneously reported to the police and officers were immediately dispatched to the area.

In *Navarette*, after a 911 caller reported that a vehicle ran her off the road, the police located the vehicle she identified during the call and executed a traffic stop. 572 U.S. at 395. The Supreme Court held that "the stop complied with the Fourth Amendment because, under the totality of the circumstances, the officer had reasonable suspicion that the driver was intoxicated." *Id*. The Court noted that the specific details provided indicated the caller had "eyewitness knowledge," which "lends significant support to the tip's reliability," even where the Court assumed that the caller was anonymous. *Id*. at 399. The timeline also suggested that the caller reported the incident soon after she was run off the road, and "[t]hat sort of contemporaneous report has long been treated as especially reliable." *Id*. The Court further noted that use of the 911 emergency system is an

indicator of verity. *Id*. Similarly, here, the details provided by the caller about the type of clothing, the vehicle, and the location indicates eyewitness knowledge. Jackson was still in the location, near the vehicle, and wearing the same clothing at the time of the encounter with police, suggesting that the caller's observations occurred close in time. Further, in this case, Jackson admits that the caller was identified by first name and phone number, rather than a completely anonymous caller.

Similarly, in *United States v. Mosley*, 878 F.3d 246, 250 (8th Cir. 2017), a witness relayed information to a bank employee who provided that information to 911 after a robbery occurred. The witness reported that "a gray/silver Ford Taurus was in the vicinity of the bank and was the only vehicle leaving the area in the moments after the robbery." *Id*. The witness followed the vehicle and provided its information, which was relayed to 911 dispatch, but when the witness got close, he reported that he could only see one woman in the car, while he saw two men running from the bank, so he was not sure if the vehicle was involved in the robbery. *Id*. The Eighth Circuit found reasonable suspicion supported the vehicle stop considering the close temporal and physical proximity of the vehicle to the crime. *Id*. at 252. The Court further found that eyewitness knowledge, contemporaneous reporting, and accountability weighed in favor of the witness's reliability. *Id*. at 253.  *See also United States v. Woods*, 747 F.3d 552 (8th Cir. 2014); *United States v. Lawhorn*, 735 F.3d 817 (8th Cir. 2013); *United States v. Olson*, 262 F.3d 795 (8th Cir. 2001).

Here, the stop of the defendant was also supported by reasonable suspicion that he was involved in the reported criminal activity. The officers responded to the call at approximately 3:56 a.m., which is a time of day when not many individuals will be active, particularly in the area of the complaint.  As is seen on the MVR video, no other persons were out in the area besides the defendant.  The only other persons in the area were inside the defendant's vehicle, which was also described by the complainant to Little Rock communications.  *See Dawdy*, 46 F.3d at 1429 (8th

Cir. 1995) (including the time of day or night among the factors that may be considered in determining the existence of reasonable suspicion). The defendant's vehicle was at the exact location of the reported narcotics transaction. *See United States v. Raino*, 980 F.2d 1148, 1150 (8th Cir. 1992) (holding that officers had reasonable, articulable suspicion that a defendant was involved in criminal activity when they were responding to a "late-night call" of shots fired in "precisely the area" where the defendant's vehicle was located). It is also clear that reasonable suspicion existed due to the circumstances and information being easily corroborated once officers arrived on the scene. *See United States v. Fisher*, 597 F.3d 1156, 1159 (10th Cir. 2010) (rejecting the argument that reasonable suspicion did not exist because the officer stopped the defendant before knowing whether he fit the description of the suspect, where the officer was responding to a 911 call late at night, the defendant's vehicle was the only one at the scene, and the vehicle appeared as though it were about to depart the scene). The defendant was not stopped merely on a "hunch." He was stopped because the officers had been informed that a certain crime was being committed at that specific location, and the circumstances gave rise to the rational inference that the defendant and his vehicle might be involved in said crime. Given the circumstances, the officers would arguably have been considered derelict in their duty to protect the public had they *not* conducted an investigative stop of the defendant. *See id*.

      Jackson relies on a First Circuit case, *United States v. Monteiro*, 447 F.3d 39 (1st Cir. 2006), for his assertion that the tip in question was unreliable. However, *Monteiro* involved a tip from a known rival gang member, who stated that Monteiro had been involved in a shooting on Shirley Street. *Id.* at 41. The *Monteiro* tip was not adequately corroborated as "there was no physical evidence of gunfire on Shirley Street (as there usually was after shootings in the neighborhood)" and officers, who had been alerted to be on the lookout, did not see the car

involved in the area of the purported shooting that day. *Id.* at 46. Additionally, a full week transpired from the time the tip was given to when officers searched Monteiro. *Id.* at 49. In *Monteiro*, the tip was found to be unreliable partly due to the inconsistency of the evidence associated with the tip and the suspected motive of the rival gang member complainant. However, Jackson's case differs and involves a tip that was sufficiently corroborated and a search that was initiated within an hour of the tip, and there is no evidence that calls into question the complainant's motive.

Even if the call in this case were completely anonymous, "[a]n anonymous tip can also provide reasonable suspicion by itself, but only if it is sufficiently corroborated at the time of the stop." *Spotts*, 275 F.3d at 720 (cleaned up) (citing *Alabama v. White*, 496 U.S. 325, 329, 110 S.Ct. 2412, 110 L.Ed.2d 301 (1990); *J.L.*, 529 U.S. at 270). "Because only a small number of people are generally privy to an individual's itinerary, it is reasonable for police to believe that a person with access to such information is likely to also have access to reliable information about that person's illegal activities." *Alabama*, 496 U.S. at 331. *See also United States v. McBride*, 801 F.2d 1045, 1047 (8th Cir. 1986) (holding that a tip was sufficiently reliable when it suggested a basis for firsthand knowledge regarding location of the suspect and where the suspect was headed).

Courts will "consider 'what the officer reasonably knew at the time' rather than assessing the existence of reasonable suspicion 'with the vision of hindsight.'" *United States v. Slater*, 979 F.3d 626, 629 (8th Cir. 2020) (quoting *United States v. Hollins*, 685 F.3d 703, 706 (8th Cir. 2012)). In *Slater*, the Eighth Circuit found that a "combination of factors support[ed] a finding of reasonable suspicion justifying the stop" where the defendant and his companion "matched the generic description of the assailants, they were in close temporal and geographical proximity to the crime, their clothing partly matched the assailants' clothing, and they were walking away from

the crime scene." *Id*. at 631.

Likewise, in the instant case, sufficient corroborating circumstances at the time of the stop justify the stop: Jackson matched the physical description and the clothing description from the tip, he was in close temporal and geographical proximity to the tip's report, and he was walking away from a vehicle that matched the tip's description. Officers were responding to a contemporaneous early-morning communications call of a black male wearing a camo jacket, selling narcotics out of a black SUV, in the area of East 8th Street. The call was sufficient for the responding officers to reasonably suspect that criminal activity was occurring at that location. When the officers arrived, they observed the defendant fitting the description, walking away from a black SUV, wearing a camo jacket. These facts provided the necessary reasonable suspicion to justify an investigative stop of the defendant. Once the defendant hesitated, refused to comply with orders, and looked over his shoulder as if preparing to flee, officers reached out to stop him from leaving the scene. While officers were attempting to perform a stop and frisk for officer safety, a loaded firearm fell from the defendant' jacket. At this point the officers were completely justified in using necessary force to detain and control the defendant. It was determined that the defendant possessed a weapon and drugs and was a convicted felon. The stop, the search and seizure, and the arrest were proper. The stop was supported by reasonable suspicion and the evidence was not seized in violation of the Fourth Amendment. Accordingly, the defendant's motion to suppress should be denied.

**WHEREFORE**, the United States respectfully requests that the defendant's motion to suppress evidence be denied.

Respectfully Submitted,

JONATHAN D. ROSS
Acting United States Attorney

By:  Bart Dickinson
Bar No. 98143
Assistant United States Attorney
P.O. Box 1229
Little Rock, Arkansas 72203
(501) 340-2600
Bart.Dickinson@usdoj.gov